IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | C.R. NO. C-09-341 |
| | § | |
| DIONNE LUCILLE OLIVA | § | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant was charged with simple possession of marijuana in violation of 21 U.S.C. § 841 and with driving while intoxicated on federal lands in violation of 18 U.S.C. §§ 7, 13. Pending is defendant's motion to suppress. (D.E. 9). Defendant argues that her arrest was without probable cause and that the search of the vehicle in which the marijuana was found in her purse was unreasonable in violation of the Fourth Amendment. (D.E. 15). For the reasons stated herein, defendant's motion is DENIED.

## I. ANALYSIS

Officer Michael Stewart arrested defendant for driving while intoxicated after finding her parked at the Corpus Christi Naval Air Station. He also testified that he charged her with possession of marijuana discovered in plain view sitting in her open purse during a search of the vehicle.

Defendant seeks to have all tangible evidence seized by law enforcement officers in connection with her arrest for driving while intoxicated, any statements given to law enforcement in connection with that arrest, any testimony by law enforcement regarding that arrest, and any evidence of the arrest itself, suppressed on the ground that the arrest was without probable cause and therefore all evidence obtained pursuant to that arrest is fruit of the poisonous tree. (D.E. 15, at 3). She further argues that the search of the vehicle was

unreasonable and that any evidence obtained as a result of that search must also be suppressed. Id.  The government argues that the officers had probable cause to arrest defendant, and that the marijuana was seized during the course of a lawful search incident to arrest.  (D.E. 17).

**A.     The Government Has The Burden Of Proof.**

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials.  When a defendant demonstrates that the search was conducted without a warrant, the government has the burden of proof.  United States v. Roch, 5. F.3d 894, 897 (5th Cir. 1993) (citation omitted).

**B.     The Officers Had Probable Cause To Arrest Defendant.**

The Fifth Circuit has explained, "[a] warrantless arrest must be based on probable cause." United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995) (citations omitted).  If an arrest lacks probable cause, "evidence discovered as a result of the arrest is subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest."  Id. (citations omitted).  The Wadley court further explained how to determine whether probable cause exists:

> Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.

Id. (citation omitted).

In this case, defendant was arrested under suspicion of driving while intoxicated on land acquired for the use of the United States.  See 18 U.S.C. §§ 7, 13; Tex. Penal Code § 49.04. Pursuant to 18 U.S.C. § 13, the elements of the offense are incorporated from Texas law.  See 18 U.S.C. § 13(a) ("Whoever ... is guilty of any act or omission which ... would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated ...

2

shall be guilty of a like offense and subject to like punishment."). Pursuant to Texas statute, a person is guilty of driving while intoxicated "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code § 49.04(a).

There is no statutory definition of "operate" in the Texas Penal Code. Freeman v. State, 69 S.W.3d 374, 376 (Tex. App. 2002). However, Texas appellate courts have held that when reviewing a conviction for driving while intoxicated, courts must "look[] to the totality of circumstances to determine if the defendant exerted personal effort upon his vehicle in a manner that shows the intentional use of the vehicle for the intended purpose." Id. (citing Barton v. State, 882 S.W.2d 456, 459 (Tex. App. 1994)). Applying this test, several courts have affirmed convictions where the defendant was not, at the time of arrest, driving the vehicle. See Dornbusch v. State, 262 S.W.3d 432, 433-34 (Tex. App. 2008) (vehicle stopped in restaurant parking lot with defendant asleep at wheel with one foot on the brake and transmission in drive); Sheldon v. State, No. 06-08-00005-CR, 2008 WL 2388687, at *1 (Tex. App. June 13, 2008) (unpublished) (vehicle stopped on farm-to-market road had run out of gas); Freeman, 69 S.W.2d at 376 (defendant was asleep in driver's seat with motor running, gear shift in drive, and the right front tire against the curb); Barton, 882 S.W.2d at 457 (Tex. App. 1994) (vehicle located in intersection, engine idling and transmission in neutral).

The government asserts that the vehicle's engine was running when they approached defendant. However, the Texas courts have never specifically held that the car's engine must be running to support a conviction for driving while intoxicated, and at least one Texas court has upheld a conviction where the defendant's car was out of gas and inoperable at the time of her arrest, on the theory that it was reasonable to assume that she drove the car to that point while

intoxicated.  See Sheldon, 2008 WL 2388687, at *3.  Defendant relies on Ballard v. State, 757 S.W.2d 389 (Tex. App. 1988), and Reddie v. State, 736 S.W.2d 923 (Tex. App. 1987) in support of a narrower definition of operation.  (D.E. 18).  However, those cases are no longer good law.  See Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), overruled in part on other grounds Paulson v. State, 28 S.W.3d 530 (Tex. Crim. App. 2000); see also Frohwein v. State, No. 08-03-00488-CR, 2005 WL 1413210, at *4 (Tex. App. June 16, 2005) (recognizing that Geesa overruled Reddie and Ballard).

      Officer Stewart testified that when he approached the vehicle, defendant was in the driver's seat.  The keys were in the ignition, and the radio was on.  He further indicated that in order to remove the keys from the car's ignition, he had to turn them to the "off" position.  Furthermore, he administered three field sobriety tests to defendant, the results of which led him to conclude that there was a high probability that she was intoxicated.  Although defense witnesses testified that only Mr. Murphy, defendant's companion in the car, was operating the radio, and that the vehicle was in fact stuck in the sand, they gave no indication that the officers were actually aware or could have been aware of those conditions at the time of defendant's arrest.  Accordingly, considering the totality of the circumstances at the time defendant was arrested, the officers had probable cause to arrest her for driving while intoxicated.  Her motion to suppress any evidence obtained in connection with that charge is DENIED.

**C.**     **Defendant Has Standing To Contest The Search Of The Vehicle.**

      The Supreme Court has held that a mere passenger does not have a legitimate expectation of privacy in a vehicle, and therefore cannot assert that his Fourth Amendment rights have been violated by an unreasonable search of that vehicle.  Rakas v. Illinois, 439 U.S. 128, 148-49

(1978). The Court explained that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Id. at 133-34 (citations omitted). Thus, "since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment ... it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." Id. at 134 (citations omitted). The Court further noted that "[e]ach time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights." Id. at 137. Therefore, "misgivings as to the benefit of enlarging the class of persons who may invoke [the exclusionary] rule are properly considered when deciding whether to expand standing to assert Fourth Amendment violations." Id. at 138.

Following Rakas, the Fifth Circuit has "held that, '[t]ypically, a passenger without a possessory interest in an automobile lacks standing to complain of its search because his privacy expectation is not infringed.'" United States v. Riazco, 91 F.3d 752, 754 (5th Cir. 1996) (quoting United States v. Roberson, 6 F.3d 1088, 1091 (5th Cir. 1993)).[1] The Riazco court further explained that "[t]here is no logical reason to adopt a different rule for a driver simply because he happens to be behind the wheel when the car is stopped." Id. at 755. Accordingly, the court held that a defendant who was driving a rental car, but who was not an authorized driver on the rental agreement and did not have the permission of the holder of the rental agreement to drive the car, did not have a legitimate expectation of privacy in the vehicle and

---

[1] Defendant cites United States v. Kye Soo Lee, 898 F.2d 1034 (5th Cir. 1990), for the proposition that a passenger has standing to challenge the search of a vehicle. That case is inapposite, as the court, without explanation, treated the defendant as a driver, although he had not been driving at the time of the stop. See id. at 1038 ("In the instant case, Chay and Kye Soo Lee were operating the truck with Min Sik Lee's permission.").

therefore had no standing to challenge a search of that vehicle. Id. ("It was not objectively reasonable for Riazco to expect privacy – with respect to the car's speaker cavities – based on the permission of a person who was not in fact authorized to drive the rental car."). The Fifth Circuit has explained, however, that "[t]he driver of a vehicle who is in legitimate possession of it has standing to object to the search of the vehicle, even though the driver does not own the vehicle." United States v. Cortez, 998 F.2d 1013, 1993 WL 277020, at *1 (5th Cir. July 13, 1993) (per curiam) (unpublished) (citing United States v. Arce, 633 F.2d 689, 694 (5th Cir. 1980)).

Here, defendant concedes that she did not own the car. Therefore, in order to assert an interest sufficient for her to claim a legitimate expectation of privacy in the car, she would have to show that she was operating the car at the time it was searched, and that she had permission from the owner to do so. Officer Stewart testified that defendant indicated in an interview after the search that she had not been driving the car and that it was not her car. In United States v. Martin, 68 F.3d 469, 1995 WL 581913 (5th Cir. Sept. 11, 1995) (per curiam) (unpublished), the Fifth Circuit considered a similar factual scenario in which "[a]lthough the keys were found on his person shortly after the arrest, Martin denied that the keys were his. In a later interview, Martin denied owning the car and refused to state whether he was the driver of the car." Id. at *3. Martin further conceded that he had no expectation of privacy in the automobile at the suppression hearing. Id. Although defendant has not conceded that she lacked standing, she has nevertheless disavowed any possessory interest in the vehicle, and presented testimony to that effect at the suppression hearing.

However, defendant's lack of possessory interest in the car does not end the standing

inquiry. The evidence defendant seeks to suppress – the marijuana – was found in her purse when officers searched the vehicle. The Supreme Court has held that a bus passenger has a legitimate expectation of privacy in his luggage. Bond v. United States, 539 U.S. 334, 336 (2000) ("Indeed, it is undisputed that petitioner possessed a privacy interest in his bag."). Moreover, in Wyoming v. Houghton, 526 U.S. 295 (1999), the Court heard a challenge by a passenger in another person's car to a search of her purse. Id. at 297-98. The Supreme Court concluded that "passengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars," implying that a passenger has a privacy interest in his property in a car separate from any interest in the vehicle itself. Id. at 303 (citations omitted); see also Brendlin v. California, 551 U.S. 249, 127 S. Ct. 2400, 2403 (2007) (holding "that a passenger is seized as well and so may challenge the constitutionality of the stop").

Additionally, the Fifth Circuit has explained that "[t]he owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the contents of his suitcase." United States v. Buchner, 7 F.3d 1149, 1154 (5th Cir. 1993) (citation omitted). In Buchner, the Fifth Circuit held that a defendant had standing to challenge the search of a vehicle in which his shoulder bag was found, although he did not own the vehicle and alleged no possessory interest therein. Id. Here, because the marijuana was discovered in defendant's purse, and her ownership of that purse is undisputed, she has standing to challenge the search.

**D.     The Search Of The Vehicle Violated The Fourth Amendment.**

It is undisputed that the officers did not obtain a search warrant for the vehicle. Regarding warrantless searches, the Supreme Court has explained that "searches conducted

7

outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967); accord Arizona v. Gant, __ U.S. __, 129 S. Ct. 1710, 1717 (2009) (citation omitted).

The government argues that the discovery of the marijuana in defendant's purse falls within the plain view exception to the warrant requirement. However, the plain view doctrine applies only where "law enforcement officers are lawfully in a position from which they view it, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to it." United States v. Munoz, 150 F.3d 401, 411 (5th Cir. 1998). Officer Stewart testified that the marijuana was in plain view when they searched the car because it was in defendant's purse in the front seat. (D.E. 17, at 6). Thus, the plain view doctrine only applies if the officers' search of the car was lawful.

Officer Stewart testified that the vehicle was searched pursuant to a search incident to arrest. Historically, the Supreme Court has "held that a search incident to arrest may only include 'the arrestee's person and the area 'within his immediate control' - construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'" Gant, 129 S. Ct. at 1716 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)). Consequently, "[i]f there was no possibility that an arrestee could reach into the area that law enforcement officers could seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." Id. (citing Preston v. United States, 376 U.S. 364, 367-68 (1964)).

In New York v. Belton, 453 U.S. 454 (1981), the Supreme Court applied the Chimel

reasoning to searches of vehicles. Gant, 129 S. Ct. at 1716-17; see also Belton, 453 U.S. at 460 ("hold[ing] that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). Belton "has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." Gant, 129 S. Ct at 1718. The Court rejected this broad interpretation of Belton:

> Under this broad reading of *Belton*, a vehicle search would be authorized incident to every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search. To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception-a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." ... Accordingly, we reject this reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

Id. at 1719.

Here, Officer Stewart testified that both defendant and her friend who was with her were in custody in patrol cars. Thus, they did not pose a threat to any of the officers' safety. Similarly, there was no risk that either would access and destroy evidence still within the vehicle.

If that concluded the analysis, then there would be no reasonable basis for the search. However, the Gant Court "also conclude[d] that circumstances unique to the vehicle context

9

justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime or arrest might be found in the vehicle.'" Id. (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)).  In Gant, because the defendant was arrested for driving with a suspended license, the police could not expect to find any evidence of this crime during a search of the vehicle.  Id.

In this case, during the suppression hearing, defense counsel asked Officer Stewart, "Was the search of the vehicle related to trying to find evidence of my client's driving while intoxicated?"  Officer Stewart answered, "Yes, sir yes to see if there was any open containers, anything that was suspect.  We weren't looking specifically for drugs.  We were just making sure that there was no other contraband inside the vehicle."  This case is distinguishable from the facts presented in Gant where the defendant was arrested for a routine traffic violation.  It would be reasonable for officers to search the vehicle for evidence of driving while intoxicated, including open or empty containers.[2]  The officer's testimony establishes that the search sought evidence related to defendant's arrest for driving while intoxicated.

Thus, the search of the vehicle was lawful even though there were no open containers found.  Consequently, the plain view doctrine applies to the search of defendant's purse where Officer Stewart testified that it was readily visible when the purse was lifted up from the floor of the passenger seat area.  Accordingly, defendant's motion to suppress the evidence obtained as a result of the search of the vehicle is DENIED.

---

[2] The statute at issue in this prosecution requires a heightened penalty if a defendant has an open container: "If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession, the offense is a Class B misdemeanor, with a minimum term of confinement of six days."  Tex. Penal Code § 49.04(c).

## II.  CONCLUSION

The government has adequately demonstrated that probable cause existed to arrest defendant under suspicion of driving while intoxicated.  Defendant's motion to suppress any evidence relating to her arrest for driving while intoxicated is DENIED.  She has a legitimate expectation of privacy in her purse, and therefore has standing to challenge the search of the vehicle.  Because pursuant to Arizona v. Gant, "[p]olice may search a vehicle [when] it is reasonable to believe the vehicle contains evidence of the offense of arrest," 129 S. Ct. at 1723, defendant's motion to suppress any evidence obtained as a result of the search of that vehicle is DENIED.

ORDERED this 1st day of July 2009.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE